### R. C. BALLARD et. al. v. JOSEPH E. DAVIS.

31   525
79   569

BOARD OF POLICE: STATUTORY JURISDICTION: HOW EXERCISED.—The Legislature, by a local act passed in 1846, authorized the Board of Police of Warren county to appoint three levee inspectors for that county, who were empowered to designate the lands of the riparian proprietors on the Mississippi river, on which a levee was necessary, and which should be assessed with a levee tax, for the purpose of erecting a levee on them, and also to estimate the cost of said levee, and to make report thereof to the board; upon the report of said inspectors, the board was authorized to assess a sum on the lands of the several proprietors, which had been so designated, sufficient to build a levee thereon. Two of the three inspectors so appointed, examined and designated the lands on which they deemed it necessary to erect a levee, and estimated the cost of the same, and made a report to the Board of Police; the third inspector afterwards conversed with the two, and ascertaining from them their action, approved

it, and the board thereupon made the assessment. *Held,* that the jurisdiction of the board, over the subject, did not come within the constitutional delegation to them, of power "over matters of county police," but was special, and derived entirely from the statute, and could only be exercised in the mode, and after a strict compliance with all the conditions prescribed in the act; and that it was essential to the validity of the assessment made by them, that all three of the inspectors should have met together, acted, and reported.

IN error from the Superior Court of Chancery.  Hon. Charles Scott, chancellor.

The appellee, who was the complainant in the court below, filed his bill in the Superior Court of Chancery, seeking to enjoin perpetually the collection of a levee tax assessed against him, and the construction of a levee proposed to be made on his land, by virtue of proceedings instituted under the Act of the Legislature of this State, approved 23d February, 1846.

The first section of that Act provided, "That the Mississippi river, so far as it touches the county of Warren, should be leveed, where a levee was necessary, at the cost of the riparian proprietors."

Section 2, provided, "That the Board of Police of Warren county, shall be convened by the president thereof, immediately after the passage of this act, for the purpose of appointing levee inspectors; and shall immediately proceed to appoint three freeholders, who own lands on said river, and reside on or near the same, to serve as levee inspectors for the term of one year from the time of their appointment, and until successors are appointed and qualified, whose duty it shall be to designate the land which may require to be leveed, to lay out the line of said levees, to contract for the building of the same, as hereafter mentioned, to superintend the construction thereof," &c.

Section 4, enacted, "That the said inspectors immediately after their appointment shall proceed to designate the land which they may deem it necessary to levee, to lay out the line of said levee, and to estimate the probable cost thereof, and report said amount to the president of the Board of Police, who shall thereupon convene the board, which, when so convened, shall assess a tax on said land for the requisite amount, to be called a levee tax,

together with a sufficient sum for defraying the expenses of collecting the same; the report of the inspectors shall be entered of record in the proceedings of said Board of Police; and the tax may be levied to be paid in such instalments as the board may think proper: *Provided*, that back lands (not located on the bank of the river, that would be benefited by the erection of a levee,) shall be taxed in proportion to the benefit the proprietors of said land would receive."

Sections 11 and 12 authorized the inspectors, or a majority of them, and in cases of emergency any one of them, to contract to have the levee so made, repaired.

The facts in relation to the appointment and report of the inspectors, are fully stated in the opinion of the court.

In March, 1850, and during the pendency of this suit, the Legislature passed an act, amendatory of the Act of 1846, by the provisions of which the levee inspectors were prohibited from erecting a levee on a certain portion of the lands lying on the Mississippi river, and this portion so exempted, included the lands of complainant, upon which the levee tax had been assessed under the Act of 1846, and to enjoin the collection of which, the suit was *instituted*. The fifth section of the act is as follows:—"That the provisions of this act shall not be so construed as to hinder or affect the collection of any levee tax heretofore assessed, or in any manner to impair the rights of any person to any suit, either at law or equity; but all suits which may have been commenced under the law to which this is an amendment, shall be prosecuted to final judgment or decree, in the same manner as if this act had not been passed."

The levee inspectors and the sheriff of Warren county were made defendants to the bill. The chancellor, on final hearing, decreed that the collection of the tax assessed on complainant's land, should be perpetually enjoined; and also enjoined the commissioners from building a levee, except in accordance with the provisions of the Act of 1850. From this decree, the defendant sued out this writ of error.

Only so much of the argument of counsel as relates to the point decreed by the court, is given.

*T. A. Marshall*, for plaintiff in error.

It is contended by the counsel of defendant in error, that even if the law be held constitutional, the proceedings of the board of police under it must be declared void; because the statute requiring the appointment of three inspectors, and making it the duty of all to view and lay out the line of the levee, &c., and report to the president of the board of police; that two only having reported, and the tax assessed by the board being based upon that report, the whole is void, upon the principle that a power being delegated to several, all must join in the exercise of it, and that the action of any number less than the whole is without authority and void.   If this were a power granted to several persons to transact private business, the rule would probably be as contended for by complainant's counsel; but it has no application, it is believed, to the exercise of powers relating to public business.   In such cases, public policy requires that the acts of the majority must govern, and be binding.   The Supreme Court of Pennsylvania say, in the case of *The Commissioners of Alleghany county* v. *Leckey*, 6 Serg. & Raw. 170, that " where powers are granted to several persons to transact private business, the rule is, that all must join in the execution of the power.   But this rule was never applied to public business of a judicial nature; nor to public business of a deliberative nature, though not judicial; nor to cases where powers are given to corporate bodies."   Where three commissioners, therefore, are authorized, by act of the legislature, to buy land and build a county jail, and two only make the purchase, their action is valid.   Although the act confers the power on the commissioners, a majority of them may exercise it.   See also, 5 Binney, 482; (and I invite the special attention of your Honor, to the reasoning of the court in that case.)   *Green* v. *Miller*, 6 Johns. R. 41; *Hill* v. *Sunderland*, 7 Vermont, R. 218.   It may be that all of the inspectors should have acted in laying out the line of the levee, yet, it certainly was not necessary that all should have concurred in the line adopted, or signed the report.   The judgment and advice of all ought probably to have been exercised; but the conclusion of the majority would have to prevail.   In this case, although Adams did not sign the report, he fully approved

Ballard et al. *v.* Davis.

it, and concurred in it. He was present when the line of the levee complained of was laid out, and assisted in laying it out; and if the law was not in all respects literally complied with, I think there can be no doubt it was in spirit and substance. If the object of the law was to have the benefit of the discretion and judgment of all three inspectors, that object has been fully attained. If the report be declared insufficient, because it was not signed by Adams, what will be the effect of the decision? Why, the whole labor of laying out the line of the levee, making estimates of the cost of erection, laying the tax, &c., will probably have to be encountered again. And for what?—not to have the benefit of Adams's judgment and views on the subject, for they are already given, and are now before this court, embodied in the report signed by Ballard and Henderson, and I insist, that for all the purposes and objects of the law, that is now as much the report of Adams as of the other inspectors. How can this court know that Adams was not present before the board of police, and approved that report, or that other satisfactory evidence was not adduced that he did approve and adopt it, before the tax was assessed. If he might have been present, approving and adopting it, this court, in the absence of all evidence to the contrary, will presume he was there, and did approve and adopt it. Without the production of the record of proceedings of the board, and without it being made to appear clearly, that the judgment of the board was void, they having exclusive jurisdiction of the subject-matter, this court will presume their judgment to be correct. *Smith* v. *Denson*, 2 S. & M. 326; *Langhman* v. *Thompson*, 6 Ib. 259; *Herring* v. *Wellont*, 5 Ib. 354; 2 How. 908; 6 S. & M. 209; 7 Ib. 197, 313.

But I submit, whether in any view of the law, the failure of Adams, either to sign or approve the report, can render the judgment of the board in assessing the tax, void. The power of assessing the tax was conferred alone on the board. The inspectors are only authorized or directed "to designate the land which they may deem it necessary to levee, to lay out the line of said levee, and to estimate the probable cost thereof, and report said amount to the president of the board of police." But it was no part of their duty to say how much tax should be assessed against, or on

any particular land, either front or back. It was not incumbent on them to inspect the back land at all; and their report, as to the amount of tax which they believed ought to be assessed on the various sections, and parts of sections, front and back, was purely a matter of accommodation to the board; they were so far, merely witnesses, upon whose evidence the board might act or not, as they thought proper. The inspectors are to give their estimate of the probable cost of constructing the whole levee, and the board are to impose that cost by taxation, on the various owners of land, front and back, in proportion to the benefit received by each from the erection of the levee; and of that benefit the board of police alone, under the law, had the right to judge. They might ask the advice of the inspectors, or of any others, as to how the cost should be parcelled out, and the tax imposed or not, as they pleased; but the duty of judging of the benefit to be received by the various owners of land, and assessing the tax, is clearly devolved on them by the law. It was the safest and most satisfactory course, however, to hear evidence on the subject of assessing and distributing the tax; and they did therefore hear the evidence of the inspectors and others. The report of the inspectors was to precede the assessment of taxes; but the law does not require that the report shall be signed or approved by all of the inspectors. If then this was a public trust, conferred on them, or if they were acting in a matter of a public nature, and this was the act of the majority, provided all convened to lay out the line of the levee and estimate the cost of building, it is, in legal contemplation, the act of all; and complainant has not made it appear affirmatively, that Adams, the inspector who did not sign the report, was not with the other inspectors when the line of the levee complained of, was laid out, and an estimate made of the cost of erecting it. This court, I repeat, is bound to presume that the judgment of the board of police is correct, as the authorities cited above, from our own High Court, abundantly show. It is not denied, that where a party claims title under a tax sale, he must show affirmatively, that all the pre-requisites to authorize the sale have been strictly complied with. This rule, however, has been altered by legislative acts in this State. So must one claiming title to land under an

administrator's deed, show affirmatively, by the production of the record, that all the steps required by law, to authorize the sale, were properly taken. But suppose a suit were brought on the note given the administrator for the land, and the defendant wished to avoid the payment of the money, or the recovery of a judgment against him, because he received no title, on account of irregularity or illegality in the proceedings of the Probate Court, in granting the order of sale, unquestionably, it would be the duty of the defendant to produce the record—the whole record—and show affirmatively the irregularity complained of. This has been expressly decided in the case of *Smith* v. *Denson*, cited above, as well as some of the other cases referred to. It follows then, that the complainant who resists the action of the court, or board, on the ground of irregularity in their proceedings, must produce the record and show it, or show affirmatively, by some other legal and competent evidence, that the action of the board was illegal and void. These remarks apply with equal force to the arguments of complainant's counsel, in regard to the want of notice being posted at the door of the court house, of the time of holding the special term of the board of police. If any notice was necessary, complainant ought to have shown that it was not given.

But I insist, that complainant is estopped by his own bill, from saying that the report to the board of police was only made by two of the inspectors, and therefore void. He alleges that "the inspectors" reported, &c., and the allegations of his bill, sworn to by himself, I insist, are conclusive upon him.

In addition to the authorities cited above, to show, that, where several persons are entrusted with power of a public nature, the acts of the majority must govern, I will refer the court to *The King* v. *Beeston*, 3 Term, R. 592, and *Grindley* v. *Barker*, 1 Bos. & Pull. 229, in which Eyre, Ch. J., says: "It is now pretty well established, that when a number of persons are intrusted with power, not of mere private confidence, but in some respects of a general nature, and all of them are regularly assembled, the majority will conclude the minority, and their act will be the act of the whole." In the present case, it seems to me that the powers intrusted to the inspectors were "not of mere private confidence,"

but were, unquestionably, "in some respects of a general nature." If any authority on this subject is requisite, it will be found in 8 Wend. 101, 102; 8 Cow. 146, and other cases above cited. And in *Pierce* v. *Kimball,* 9 Greenleaf, R. (Maine,) 54, it is expressly decided, that if a statute extends to all persons within the territorial limits described in the statute, it is a public statute.

In conclusion, I will remark, that, if this court had no jurisdiction of the matters in controversy, the answers of defendants cannot give it jurisdiction. Consent of parties cannot confer jurisdiction. See 1 Bibb, 262; 3 M'Cord, 280; Breese, 31; Coxe, 31, 70; 7 How. 229; 4 S. & M. 549.

*W. C. Smedes,* on same side.

*H. J. Harris,* for defendant in error.

But, even admitting that the inspectors were legally appointed, the question arises, did they discharge, according to law, the duty imposed upon them by the Act of 1846? In my view, they did not. The court will see, that the report required by the 4th section of the Act of 1846 was made by Ballard and Henderson, *two* of the inspectors, and that Adams, the other inspector, was not present, either when the two selected the lands to be leveed, or when they made their report. It is true, Adams says he afterwards approved what had been done, but clearly, that can make no difference. If the act of the two was void, at the time it was done, the subsequent ratification of it, by Adams, cannot impart to it the slightest validity. The 4th section of the Act of 1846, devolved a public duty on these three men, and gave no authority to a majority of them to perform it. In the 10th, 11th, and 12th sections of the act, certain other duties, of a less important character, were required of the inspectors, and in those sections express power was given to the majority to act; but none such was conferred by the 4th section, thus showing that the legislature did not intend that a majority might act under *that* section. Had it been otherwise, the provisions of the sections, so far as they conferred powers, would have been the same. The legislature manifestly understood, that to enable the majority to act, it was neces-

sary to authorize it by law ; and having given such power in the 10th, 11th, and 12th sections, and carefully withheld it in the 4th, they must have intended, as was just and proper, that, as to the important duties imposed on the inspectors, by the 4th section, the public should have the benefit of the deliberations and judgments of all.

But, taking the fourth section alone, I contend that, on well settled principles of law, two of the inspectors, without consultation with the third and in his absence, could not discharge the duties specified in the fourth section. In support of this position, I refer the court to 1 Bacon, Abridgment, (Bouvier's ed. of 1846,) p. 525, and the authorities there quoted. The following principle is there laid down as undoubted law: "Where a number of persons are intrusted with powers of a public nature, and not of mere private confidence, *and all of them are regularly assembled*, the majority will conclude the minority, and their act will be the act of the whole. *If the power given requires the exercise of judgment, all the persons intrusted with it must be assembled together when they execute it.*" This doctrine is expressly established in *Grindley* v. *Barker*, 1 Bos. & Pul. 229 ; *Rex* v. *Inhabitants of Winwick*, 8 T. R. 454; *Rex* v. *Inhabitants of Great Marlow*, 2 East, 244 ; *Battye* v. *Gressley*, Ib. 319 ; *Watson* v. *The Duke of Northumberland*, 11 Vesey, 160 ; *Rex* v. *Whitaker*, 9 Barn. & Cress. 648; Co. Litt. 181, b. The case of *Grindley* v. *Barker*, is the leading one on this point, and the attention of the court is particularly requested to the language there used by the English judges. Chief Justice Eyre said, (p. 237:) "But it struck me that when the body was so constituted *and had assembled, and could have the assistance of the united experience of all*, the necessity of all concurring in the final judgment was not so apparent, and might be attended with inconvenience." "It seems better," he says, a little farther on, "*that when all the knowledge which each class can afford has been communicated*, the whole should be governed by the majority." On page 238, he says: "*Now there is no doubt that all the six triers must assemble.*" * * * "*When all have assembled and communicated to each other the necessary information*, it is fitter that the majority should decide, than that all should be pressed to a

concurrence." * * * "The judgment of four out of six, *being the whole body to whom the authority is delegated, regularly assembled and acting,* is the judgment of all." At page 240, Heath, J., said: "*All must concur in trying,* and then, though they be of different opinions, some of one opinion, some of another, yet all having tried, the majority shall bind." At page 242, Rooke, J., said: "*All must undoubtedly try;* but it does not therefore follow that they must all decide in the same way." In 2 East, 248, the court said: "Then again, both the magistrates ought to have been present when the appointment was executed; instead of which, many days elapsed between the signature of the one and the other, and they were not together when the act was done. This is essentially necessary to be observed."

So, in this case, it was necessary that all three inspectors should meet, and give each other the benefit of their judgments as to the lands to be leveed, the time of the levee, and the other matters mentioned in section fourth; this having been done, it is admitted that two of them could have decided, and their decision would have been valid; but as the record shows it was not done, it is contended, on the authorities above cited, that the report made by *two* was a nullity. And as the assessment of the tax on the complainant's lands, by the board of police, was based on that report, it necessarily falls to the ground with it.

FISHER, J., delivered the opinion of the court.

The complainant filed his bill in the Superior Court of Chancery, to enjoin the sheriff of Warren county from proceeding to collect a certain tax, assessed by the board of police of said county, on the lands of the complainant; and to enjoin the other defendants from constructing a levee upon said lands.

It appears that an act of the legislature was approved on the 23d day of February, 1846, declaring that levees should be constructed wherever necessary, on the bank of the Mississippi river, in said county, at the cost of the riparian proprietors of the soil. That the Board of Police, under another provision of this act, on the 16th day of March, 1846, appointed the defendants, Ballard, Henderson and Adams, levee inspectors; that by another provision

of the law, it was made the duty of these inspectors to designate the lands necessary to levee, to lay out the line of the levee, to estimate the probable costs thereof, and to report the amount to the president of the Board of Police, who was required, thereupon, to convene the said board, "which, when so convened, should assess a tax on the said land, upon which a levee was necessary, for the requisite amount to construct the same, to be called a levee tax," &c. It further appears, that the inspectors having qualified as required by the third section of the act, Ballard and Henderson entered upon the discharge of their duties, and designated the complainant's lands, among others, as lands necessary to be leveed. It also appears that these two inspectors having made their report, which was required to be entered of record in the proceedings of the Board of Police, the board being convened as required by the act, assessed a tax upon the complainant's lands, for a sum exceeding $2000; to restrain the collection of which was one, and indeed the main object of this bill.

It appears that Adams took but little part in making the proper examination of the lands; but it is said that he has conversed freely with the other two inspectors, and learning from them the manner in which their duties had been performed, he approves and ratifies their acts, as also their report, although his name does not appear to it.

The question arising for consideration on this state of the case is, whether the examination and designation of the lands by two of the three inspectors, must be regarded as a substantial compliance with the law. The jurisdiction exercised by the Board of Police, whatever it was, was derived exclusively from the statute under which they acted. There was nothing either in the nature of the subject, or in the application to be made of the money, which could bring their action within that general and sweeping clause of the Constitution which vests in the Board jurisdiction over "all other matters of county police," for the plain reason, that the sole object of the levee was to protect private property, and the money, when realized, was intended to be applied solely to this object, and not to any object in which the public had an interest. It was a contribution which an owner of land was required to make for the pro-

tection of himself; the necessity of such protection not to be judged of by the party directly interested, but to be submitted to the judgment of others, whose decision was at least to be the foundation of the tax assessed by the Board of Police. The jurisdiction of the Board of Police being then special, could only be exercised when the condition precedent had been performed, to wit, when the three levee inspectors had designated and reported the complainant's lands as necessary to be leveed. Perhaps, if all the inspectors had acted together, and all could not agree in their report, or as the result of their judgment, the majority might control the minority. But even this might be questioned under this law, which must be strictly construed, not only because it is throughout one of great rigor, but because the jurisdiction created for the administration of the law is special, and may be exercised in a summary and oppressive manner. The question is, was the party to be bound upon the judgment of two, or of three men? The law has not said that, in designating the lands, a majority should have power to conclude the minority; yet, when it comes to speak of repairing levees, a majority, and sometimes even one inspector, is authorized to act. The reason is manifest; the danger arising from the breaking of a levee may not admit of delay; prompt action may be absolutely necessary. But in regard to the construction of the levee, the proper examination of the land, &c., and from which action the pecuniary liability of a party is to arise, the law contemplated deliberate action. No haste was necessary; ample time was allowed for the judgment of all to act, and for an examination by all to be made. The action of all would, therefore, seem to have been contemplated. The action of two, or the report of two of three inspectors, cannot be treated as the report of all, or of such number as the law required. The law only required the party to surrender his own judgment, and be bound in a pecuniary obligation upon the judgment of others, upon condition that the three inspectors all concurred in selecting the complainant's lands as necessary to be leveed. All obligations, the performance of which is claimed, either arise from the party's own consent, or from some duty which the law requires him to perform; or, in other words, the obligation must either be of the party's own

creation, or forced upon him by the law. When does the law create an obligation? The answer may be, by operating upon facts; and hence, if the facts either do not exist, or do not exist in the manner required by the law, no obligation can be created, because the fact must not only exist, but exist in the proper manner, before the law will act. If the judgment of three inspectors had to be certified in a particular manner to the Board of Police, before it could assess a tax upon the complainant's lands, and the Board proceeded to make the assessment without having such authority, its action would be void; or, in other words, the assessment would not create any obligation whatever on the complainant; the law only creates an obligation when it has been fully observed. .

As this point is decisive of the case, we have not deemed it necessary to examine the other points made by counsel. Under the Act of 1850, we do not think the tax could be collected, for the plain reason that it could not be applied to the construction of a levee on the complainant's lands, as contemplated by the Act of 1846. If the money were collected, the complainant would be entitled to recover it back again. The fifth section must be construed to have reference to suits touching money, which may still be applied to levee purposes.

Decree affirmed.